UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                                :
DAIMLERCHRYSLER SERVICES              :
NORTH AMERICA LLC,                             :          CASE NO. 4:05-CV-2848
                                                                :
        Plaintiff,                                  :
                                                                :
vs.                                                         :          ORDER & OPINION
                                                                :          [Resolving Docs. No.76]
LABATE CHRYSLER, JEEP, DODGE,     :
INC., *et al.*                                           :
                                                                :
       Defendants.                              :
                                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff DaimlerChrysler Services North America LLC ("Chrysler Financial") moves for summary judgment against Intervening Plaintiffs/Counter-Claimants Ohio Edison Penn Power Credit Union and Seven Seventeen Credit Union (the "intervening parties"). [Doc. 76.] For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for summary judgment.

## I. BACKGROUND

With this motion, the Court decides who enjoys priority as between a previously-filed security agreement in automobile inventory and a later-acquired purchase money security interest. On August 31, 2004, Defendant Labate Chrysler Jeep Dodge, Inc. ("Labate Chrysler"), Rebecca Labate, and Stephen Labate (collectively, the "Labates") entered into a Master Loan and Security Agreement (the "Master Loan Agreement") with Plaintiff Chrysler Financial. [Doc. 78.] Under the terms of this agreement, the Plaintiff received a security interest in the Defendants' assets, including

-1-

Case No. 4:05-CV-2848
Gwin, J.

all vehicle inventory. The Plaintiff then perfected this security interest by filing a financing statement. *Id.* Also consistent with the terms of the Master Loan Agreement, the Plaintiff financed Defendant Labate Chrysler's acquisition of motor vehicle inventory, including the two vehicles at issue in this case: (1) a 2006 Dodge Charger R/T VIN#2BKA53H46H222311 (the "Dodge Charger") and (2) a 2005 Dodge Ram VIN#1D7HU18D35106612 (the "Dodge Ram"). *Id.*

Subsequently, Labate Chrysler entered into separate financing agreements with each of the intervening parties in connection with its purchase - from itself - of both the Dodge Charger and Dodge Ram previously described. [Docs. 94, 96.] In connection with these financing agreements, Ohio Edison alleges that it took a security interest in the Dodge Charger and Seven Seventeen alleges that it took a security interest in the Dodge Ram. *Id.* Specifically, each of the intervening parties applied for certificates of title for the respective vehicles at issue in this case, which identify the intervening parties as lienholders. *Id.*

Considering the fact that Labate Chrysler has failed to pay Plaintiff Chrysler Financial and the two Credit Unions, both the Plaintiff and the intervening parties argue that they possess a superior interest in the two Dodge vehicles discussed above. [Docs. 76, 94, 96.] In particular, the Plaintiff argues in motioning for summary judgment that, as a matter of law, its interest in the two vehicles is superior to that of the respective credit unions. [Doc. 76.] The Court considers the Plaintiff's motion for summary judgment below.

## II. LEGAL STANDARD

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c)). The moving party has the initial burden of showing the absence

Case No. 4:05-CV-2848
Gwin, J.

of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id*.

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* Nor can the nonmoving party "rest upon the mere allegations or denials of the adverse party's pleading." Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *National Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)); *see also Celotex*, 477 U.S. at 322. Ultimately the Court must

Case No. 4:05-CV-2848
Gwin, J.

decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (citation omitted).

### III. ANALYSIS

In this case, resolution of the priority dispute between Plaintiff Chrysler Financial and the two intervening parties depends primarily on whether the Ohio Motor Vehicle Certificate of Title Act (the "Title Act") or the Ohio Uniform Commercial Code (the "UCC") controls. In its motion for summary judgment, the Plaintiff argues that the UCC applies in this case and that under that statute's provisions, the Plaintiff possesses a perfected first priority security interest in the two vehicles contested in this case. [Doc. 76.] Moreover, the Plaintiff argues that the sale financed by the intervening parties did not extinguish its security interest because that sale was not in the ordinary course of business. *Id.*

The intervening parties, in contrast, argue that: (1) the Title Act controls priority issues where conflicts with the UCC and (2) even if the UCC applies, genuine issues of material fact exist regarding whether a sale in the ordinary course extinguished the Plaintiff's security interest of business. [Docs. 94, 96.] The Court first decides whether the Title Act or UCC controls regarding the issue of priority.

**A.  Controlling Authority**

In support of the proposition that their respective security interests are superior to that claimed by the Plaintiff, the intervening parties argue that the Title Act supercedes the provisions of the UCC in any instance where the two statutes are in conflict. [Docs. 94,96.] Although the Court

-4-

Case No. 4:05-CV-2848
Gwin, J.

concedes that such a principle would undoubtedly be helpful to the intervening parties' case, it finds that neither the text of the two statutes nor any case law addressing them supports such a sweeping argument.

Under the Ohio Revised Code, a security interest taken in a motor vehicle held as inventory for sale by a dealer continues in that collateral, absent either (1) the secured party authorizing the disposition of the property free and clear, or (2) a buyer purchasing the property in the ordinary course of business. OHIO REV. CODE ANN. § 1309.315(a)(1); OHIO REV. CODE. ANN. § 1309.320. Here, it is undisputed that the Defendant held the two vehicles at issue here as inventory and that Plaintiff Chrysler Financial perfected its security interest in that inventory by filing a financing statement. Nonetheless, the intervening parties argue that the UCC provisions cited above are inapplicable because they conflict with the terms of the Ohio Motor Vehicle Certificate of Title Act. [Docs. 94, 96.]

In particular, the intervening parties cite language from the Title Act that states that "[n]o person . . . shall acquire ay right title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle . . . " OHIO REV. CODE ANN. § 4505.04(A). Based upon this language, the intervening parties argue that (1) this provision conflicts with the text of the UCC and (2) that the Supreme Court of Ohio has held, in *Saturn of Kings Automobile v. Mike Albert Leasing, Inc.*, that where such a conflict exists the Title Act controls. [Docs. 94,96.] For a variety of reasons, the Court finds the intervening parties' analysis unpersuasive.

First, the Court rejects the argument that the Title Act and the UCC are actually in conflict. The text of the Title Act states that "Chapter 1309 of the Revised Code [the UCC] applies to a security interest in a motor vehicle held as inventory for sale by a dealer . . . without entry of a

-5-

Case No. 4:05-CV-2848
Gwin, J.

notation of the security interest on a certificate of title . . . " OHIO REV. CODE ANN. § 4505.13(A)(2). Similarly, comments regarding the relevant portions of the UCC explicitly state that "[c]ompliance with a certificate-of-title statute generally is not the method of perfecting security interests in inventory." OHIO REV. CODE ANN. § 1309.303, cmt. 5. By implication, both statutes therefore assume that compliance with the terms of the UCC is necessary to perfect a security interest in collateral such as the motor vehicles at issue in this case.

In light of the fact that the Title Act and the UCC should "be construed so as to give effect to each," the logical effect of the Title Act is to require that a lienholder possess title *in addition* to otherwise having a basis for contesting a secured party's first priority claim. *See Saturn of Kings Auto. v. Mike Albert Leasing, Inc.,* 92 Ohio St.3d 513,519 (Ohio 2001). Stated otherwise, the text of the Title Act and the UCC indicate that compliance with the Title Act is necessary but not sufficient in order to challenge a security interest perfected under the provisions of the UCC.

Additionally, the Court also finds that the intervening parties have misread the case law they cite in support of the proposition that the Title Act controls where its provisions overlap with those of the UCC. In their motion in opposition to summary judgment, the intervening parties argue that in *Saturn of Kings* the Supreme Court of Ohio established, as a general principle, that "the Title Act is the primary arbiter of competing claims for motor vehicles in Ohio." [Docs. 94,96.] Such an argument grossly overstates the breadth of the Ohio Supreme Court's holding in *Saturn of Kings*.

First, the primary issue presented in *Saturn of Kings* is distinct from the issue presented in the instant case. Specifically, in *Saturn of Kings* the court addressed the relatively narrow issue of "whether a person may acquire legal ownership of a motor vehicle without transfer to that person of the vehicle's certificate of title." *Saturn of Kings*, 92 Ohio St. 3d at 515. In contrast, here the

Case No. 4:05-CV-2848
Gwin, J.

parties' dispute concerns competing security interest claims rather than competing ownership claims. Accordingly, the Ohio Supreme Court's determination that the Appellee's cross-claim failed because they did not possess title is not controlling in the instant case, where no one contests ownership.

Additionally, the Court finds that to the extent that *Saturn of Kings* is relevant in this case, it establishes an *additional* rather than superceding requirement for parties seeking to challenge a security interest perfected pursuant to the provisions of the UCC. Specifically, in *Saturn of Kings* the Ohio Supreme Court held that it was unnecessary to reach the issue of whether the Appellee in that case was a buyer in the ordinary course because the Appellee's claim failed based upon their lack of title. *Id.* at 514-515. By implication, however, the Appellee would have had to also establish that it was a buyer in the ordinary course for their claim to succeed. The Court finds that such a reading of the UCC and the Title Act is consistent with the text of the two statues, which indicates they should interact in a complimentary fashion. Additionally, such a reading is also logical in that adoption of the Title Act as a superceding statute would severely undermine the purpose of the UCC and likely create a great deal of uncertainty in the law. Accordingly, the Court rejects the intervening parties' assertion that the Title Act controls in this case.

**B.    Buyer In The Ordinary Course Of Business**

Even assuming that the provisions of the UCC do apply, the intervening parties argue that the Court should still deny Plaintiff Chrysler Financial's motion for summary judgment. Specifically, the intervening parties argue that genuine issues of material fact exist regarding whether a sale in the ordinary course of business extinguished the Plaintiff's security interest. [Docs. 94, 96.] In light of the uncontested facts in this case, where the Defendants purchased the vehicles at issue from themselves in direct contravention of their agreement with the Plaintiff, the Court finds

Case No. 4:05-CV-2848
Gwin, J.

such an argument perplexing.

As was noted above, under the UCC a security interest taken in a motor vehicle held as inventory for sale by a dealer can be extinguished where a buyer purchases the property in the ordinary course of business. OHIO REV. CODE ANN. § 1309.320. The statute then defines a buyer in the ordinary course as "a person who buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person . . . in the business of selling goods of that kind." OHIO REV. CODE ANN. § 1301.01(I).

Here, the intervening parties present something of a straw man by arguing that no case law explicitly establishes that a sale to one's self is *per se* not a sale in the ordinary course of business. [Docs. 94, 96.] Irrespective of whether that is accurate, the intervening parties fail to allege any facts that support the proposition that the sale in this case was consummated in good faith and without knowledge that the sale violated another person's security rights in the two vehicles. Specifically, it is undisputed that (1) the Defendants and its principals were parties to the Master Loan Agreement entered into with the Plaintiff and (2) that agreement explicitly precluded the sale of vehicles held as inventory by the Defendant to itself. [Doc. 76.] Since the Defendant clearly knew that the transaction was prohibited, the Court finds as a matter of law that the Defendant's purchase could not have been made in good faith. Accordingly, the Court rejects the intervening parties' contention that any issues of material fact exist regarding whether a sale in the ordinary course of business extinguished the Plaintiff's security interest.

**C.     Plaintiff Compensated For Vehicles**

Finally, the intervening parties say that the Court should deny the Plaintiff's motion for summary judgment because the Plaintiff has already been compensated for the vehicles contested

-8-

Case No. 4:05-CV-2848
Gwin, J.

in this case. [Docs. 94, 96.] Specifically, the intervening parties argue that (1) the Defendant was the Plaintiff's agent and (2) that therefore, the Defendant's acceptance of monies from the purported sale extinguished the Plaintiff's security interest even though it is uncontested that the Plaintiff never received any compensation itself. *Id.* The Court rejects this argument.

The very purpose of acquiring a perfected security interest in collateral is to protect the secured party in the event that the party granting the interest is either unable or unwilling to meet its obligations. If the intervening parties' argument was accepted, it would encourage parties to avoid their payment obligations through the type of transfer engaged in by the Labate Defendants. The Court finds no basis for taking such an action and therefore rejects the intervening parties' argument.

### IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Plaintiff's motion for summary judgment.

IT IS SO ORDERED.

Dated: September 25, 2006      s/ *James S. Gwin*
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE